UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY A. GOOD, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:18-CV-516 DRL-MGG |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | |
| Defendant. | |

## OPINION AND ORDER

Mr. Timothy Good, a *pro se* litigant, challenges the United States Department of Housing and Urban Development's (HUD) implementation of a no-smoking policy in HUD-funded public housing. On July 8, 2019, Mr. Good filed a summary judgment motion. Two days later, he sent a letter to the former presiding judge seeking to suspend HUD's no-smoking policy until its legality could be determined by the courts. On July 12, 2019, HUD filed its own summary judgment motion. The court now denies Mr. Good's motions and grants HUD's crossmotion for summary judgment.

## BACKGROUND

The U.S. Housing Act authorizes HUD to distribute federal financial assistance to public housing agencies (PHAs) to provide public housing for low-income families. 42 U.S.C. § 1437. For PHAs to receive federal financial assistance, they must agree to comply with procedures and requirements as the Secretary of HUD may prescribe. 42 U.S.C. § 1437d(c)(4). In addition, the Act requires PHAs to inspect housing projects to ensure compliance with the housing quality standards determined by HUD. *Id.* § 1437d(f)(2).

In 2015, HUD proposed the Smoke Free Rule, which it later promulgated in 2016. *See* HUD, Institution Smoke-Free Public Housing, Prop. Rule, 80 Fed. Reg. 71762 (Nov. 17, 2015). The rule remains in effect today. It requires that each PHA implement a policy prohibiting lit tobacco products in all living units, indoor common areas, and in PHA administrative office buildings. *Id.* The smoke-free policy extends 25 feet outside of housing units and administrative office buildings. *Id.* The purpose of the rule is to "improve indoor air quality in public housing; benefit the health of public housing residents, visitors, and PHA staff; reduce the risk of catastrophic fires; and lower overall maintenance costs." *Id.* When promulgated, the rule forced PHAs to update their smoke-free policies and change their tenant leases, including adding lease amendments to the current tenants' leases. 81 Fed. Reg. at 87437 (Dec. 5, 2016); ECF 28 at 7.

Mr. Good is a smoker who resides in an Elkhart Housing Authority apartment unit, subject to HUD's smoke-free policy. ECF 1 at 2. In Mr. Good's complaint, he alleges several constitutional violations against his First, Fourth, and Tenth Amendment rights. ECF 1 at 2. Additionally, he claims that he was discriminated against as a smoker. *Id.* His summary judgment motion (ECF 26) purports to assert additional theories of liability under the Fifth and Ninth Amendments, the Americans with Disabilities Act (ADA), and Administrative Procedural Act (APA).

HUD filed its crossmotion for summary judgment arguing that (1) Mr. Good lacks standing to pursue his First and Fourth amendment claims, (2) Mr. Good fails to show a violation of his First and Fourth Amendment rights, (3) Mr. Good cannot show that HUD's rule improperly discriminates against smokers, and (4) HUD's rule does not implicate the 10th Amendment because it is a reasonable exercise of Congress' spending power. ECF 28 at 2.

STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

The court is not "obliged to research and construct legal arguments for parties," *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); however, the court must liberally construe the submissions of *pro se* plaintiffs, such as those from Mr. Good. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Nochols v. Mich. City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014).

DISCUSSION

A.     Standing

As a threshold matter, the court first must determine whether Mr. Good has standing to bring this action. *Bennet v. Spear,* 520 U.S. 154, 162 (1997). Generally, to satisfy the standing requirement under Article III of the United States Constitution, a plaintiff must demonstrate that: (1) he or she has suffered an injury in fact; (2) the injury is traceable to alleged actions of the defendant; and (3) the injury will be redressed by a favorable decision. *Id.*

Plaintiffs must assert a threatened or actual injury resulting from the alleged unlawful action before a federal court may assume jurisdiction. *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 (1973). An

injury must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010). Here, Mr. Good is a smoker and tenant in a HUD-funded public housing unit. HUD's smoke-free policy would personally affect Mr. Good and his ability to smoke in his public housing unit. From Mr. Good's perspective, he has already suffered an injury by being prohibited to smoke in his own home. Thus, the court finds that an injury for purposes of standing exists. *See also NYC C.L.A.S.H., Inc. v. Carson,* No. CV 18-1711 (ESH), 2019 U.S. Dist. LEXIS 92761 (D.D.C. June 4, 2019); *see generally Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.,* 656 F.3d 580, 586 (7th Cir. 2011).

Whether the injury is traceable to the alleged actions of the defendant is a closer call. In *Carson,* the plaintiffs' PHA implemented a no-smoking policy before HUD's promulgation of the Smoke Free Rule. *Id.* The court found that the plaintiffs established injury-in-fact but failed to show that their injury originated from HUD's rule. *Id.* Since the PHA had already implemented a no-smoking policy, changing the HUD rule would have had no effect. Conversely, in this case, there is no evidence that the Elkhart Housing Authority implemented a no-smoking policy before HUD's rule. If the court finds that HUD's smoke-free policy is unconstitutional, and assuming Mr. Good's PHA would not enforce a smoke-free policy otherwise, then Mr. Good's injury would be redressed. And so, based on the facts before this court, Mr. Good has standing to challenge HUD's Smoke Free Rule. *Ctr. for Energy & Econ. Dev. v. EPA,* 398 F.3d 653, 657 (D.C. Cir. 2005) ("where an agency rule causes the injury, as here, the redressability requirement may be satisfied by vacating the challenged rule").

B.  Administrative Procedure Act (APA)

The court reviews HUD's Smoke Free Rule under the standard found in the APA. Under the APA, an agency rule will be upheld unless it is "arbitrary, capricious, an abuse of discretion, . . . contrary to constitutional right, . . . [or] in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2). When a court reviews an agency decision, it must do so "narrow[ly] and a court is not

to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mutual Auto Ins. Co.,* 463 U.S. 29, 43 (1983). Rather, a court should only invalidate agency determinations that fail to "examine the relevant data and articulate a satisfactory explanation for [the] action including a 'rational connection between the facts found and the choice made.'" *Id.* Thus, the court must determine whether HUD's no-smoking policy violates a constitutional right or is arbitrary or capricious.

        1.    *First Amendment*

Mr. Good claims that HUD's implementation of its smoke-free policy in public housing violates his First Amendment rights. ECF 1 at 2. Liberally construing his complaint and summary judgment motion, he argues that smoking is a protected right under the First Amendment's freedom of speech and religion clauses. ECF 26 at 1. He argues that "[s]moking can be defined as a form of speaking or expression." *Id.* Further, he notes that "the first amendment of the constitution . . . states that we have the right to the freedom of religion and the actions of said religion." *Id.*

The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech." While the First Amendment applies to "speech," courts have long held that it also applies to expressive conduct. *Texas v. Johnson*, 491 U.S. 397, 404 (1989). To determine whether particular conduct is expressive, the court must first analyze the conduct and inquire into "whether an intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id.* Not all conduct can be labeled speech under the First Amendment. *United States v. O'Brien,* 391 U.S. 367, 376 (1968).

Here, Mr. Good fails to explain how smoking indoors in public housing units constitutes expressive conduct. He provides no explanation of the message that smoking allegedly conveys. Significantly, smoking indoors is normally viewed by no one, except those who reside with the smoker. Thus, a message is neither conveyed nor understood by those who view it. *See Johnson,* 491 U.S. at 404.

5

Because of this, smoking indoors is not afforded First Amendment protection, and Mr. Good's First Amendment claim cannot withstand summary judgment. *See also New York City C.L.A.S.H. v. City of New York*, 315 F. Supp. 2d 461, 476 (S.D.N.Y. 2004) ("The Court begins by noting that mere conduct, such as smoking, is not generally considered speech, and thus, is not in itself protected under the First Amendment.").

Even assuming that smoking was expressive conduct, HUD's rule would pass constitutional muster as a content-neutral restriction. Content-neutral restrictions on speech are subject to an intermediate level of scrutiny. *Turner Broad. Sys. v. FCC,* 512 U.S. 622, 643 (1994). They will be upheld if they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983). The Supreme Court has defined content-neutral restrictions as "those that are justified without reference to the content of the regulated speech." *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48 (1986) (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771 (1976). HUD's no-smoking policy does not target any specific viewpoint of speech and is made without reference to any message. Instead, it applies generally to everyone engaged in smoking inside HUD-funded public housing. Thus, the smoke-free policy is a content-neutral regulation, which will be upheld under an intermediate level of scrutiny if it is substantially related to an important governmental interest. *See Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989).

The no-smoking policy is substantially related to the government's interest in protecting individuals from the harmful effects of secondhand smoke. Further, HUD's rule does not prohibit smoking altogether, but rather is a content-neutral, reasonable time, place, and manner restriction. *See Thomas v. Chicago Park Dist.,* 534 U.S. 316, 323 n.3 (2002); *see e.g., New York City C.L.A.S.H.,* 315 F. Supp. 2d at 476 ("The Court finds that under the more demanding intermediate level of scrutiny, the Smoking Bans would survive CLASH's First Amendment challenge because they are content-neutral,

reasonable time, place, and manner restrictions that are substantially related to the important governmental interest of protecting individuals from the harmful effects of ETS.")

Likewise, Mr. Good's challenge to HUD's smoke-free policy fails under the Free Exercise Clause in the First Amendment. The Free Exercise Clause prohibits the government from restraining an individual's right to practice his or her religion. "Hence it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion." *Sch. Dist. Of Abington Twp. v. Schempp*, 374 U.S. 203, 222-223 (1963). Yet, Mr. Good does not allege which religion, if any, HUD's rule operates against. Significantly, he does not explain how smoking relates to his or anybody's religion. Furthermore, a neutral law of general applicability will be upheld even if it may prohibit a person's religious act. *Empl. Div., Dep't. of Human Res. of Ore. v. Smith*, 494 U.S. 872, 879. Here, HUD's rule applies to all federally funded public-housing entities; therefore, it does not single out a specific religion and is generally applicable. Mr. Good's First Amendment claim cannot survive summary judgment.

2. *Fourth Amendment*

Mr. Good next claims that HUD's rule violates his Fourth Amendment right to privacy. ECF 26 at 2. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

The Supreme Court has said that "the Fourth Amendment cannot be translated into a general constitutional 'right to privacy.'" *Katz v. United States,* 389 U.S. 347, 350-51 (1967). Instead, the constitutional guarantee of an individual's right to privacy only applies to those rights that are fundamental. "These decisions make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty' are included in this guarantee of personal privacy." *Roe v. Wade,* 410 U.S. 113, 152 (1973) (quoting *Palko* v. *Connecticut*, 302 U.S. 319, 325 (1937)).

7

Those deemed "fundamental" to date have been activities related to marriage, procreation, contraception, family relationships, and child rearing and education. *Roe,* 410 U.S. at 152-153.

Courts have repeatedly held that smoking is not a fundamental right, entitling special protection under either a right to privacy or substantive due process analysis. *See Telepo v. Ferguson, et al,* No. 5:17-cv-2865, ECF 27 at n.3 (E.D. Pa. Jan. 3, 2018); *Beatie v. City of New York,* 123 F.3d 707, 712 (2d Cir. 1997) (applying rational basis review because smoking is not a fundamental right deserving of heightened scrutiny); *Giordano v. Connecticut Valley Hosp.*, 588 F. Supp. 2d 306, 315 (D. Conn. 2008) (rejecting patients' right to privacy and substantive due process claims in which they argued that the defendant state-operated psychiatric facility's complete ban against smoking violated their fundamental right to refuse unwanted medical treatment); *Brashear v. Simms*, 138 F. Supp. 2d 693, 694 (D. Md. 2001) ("neither smoking nor possession of tobacco in a prison implicates any fundamental right"); *Operation Badlaw, Inc. v. Licking Cty. Gen. Health Dist. Bd. of Health*, 866 F. Supp. 1059, 1067 (S.D. Ohio 1992) ("It is not surprising that the Court's research has not disclosed, and the parties have not cited, any cases extending the right to privacy as far as the right to smoke either in public or in private."), *aff'd*, 991 F.2d 796 (6th Cir. 1993*); Fagan v. Axelrod*, 550 N.Y.S.2d 552, 559 (Sup. Ct. 1990) ("There is no more a fundamental right to smoke cigarettes than there is to shoot-up or snort heroin or cocaine . . . or run a red-light.").

Because there is no general constitutional protection of a person's right to privacy, Mr. Good's claim is reviewed under rational basis. *See Beatie,* 123 F.3d at 712. Accordingly, HUD's rule is rationally related to the government's interest in preventing individuals from being exposed to secondhand smoke. Mr. Good's Fourth Amendment right to privacy claim cannot withstand summary judgment.

    3.    *Fifth Amendment (Equal Protection)*

Liberally construing Mr. Good's complaint, he alleges a Fifth Amendment violation by stating that HUD's rule "can be viewed as a form of discrimination against all those who smoke." ECF 1 at

8

2. The Fifth Amendment provides that "[no] person shall be . . . deprived of life, liberty, or property, without due process of law." The Supreme Court has held that the Due Process Clause of the Fifth Amendment forbids the federal government from denying equal protection of the laws. *See Hampton* v. *Mow Sun Wong*, 426 U.S. 88, 100 (1976); *Buckley* v. *Valeo*, 424 U.S. 1, 93 (1976). "Absent a suspect classification such as race, national origin, or sex, government classifications are presumed valid and will be sustained if they are rationally related to a legitimate [government] interest." *Schweiker v. Wilson,* 450 U.S. 221, 230 (1981); *see also FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 314–15 (1993).

Under the Fifth Amendment, as interpreted, smokers are not a protected or "suspect" class. *See NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 482 (S.D.N.Y. 2004) ("Anti-smoking laws have never been recognized as creating a suspect or quasi-suspect classification."). Therefore, rational basis review again applies, and Mr. Good's claim fails.

    4.  *Tenth Amendment*

Mr. Good also lists the Tenth Amendment as a source of rights that were violated by HUD's no-smoking policy. ECF 1 at 2. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." Congress is authorized to spend for "the general Welfare of the United States." U.S. art. I, § 8, cl. 1. "Congress may offer funds to the States, and may condition those offers on compliance with specified conditions." *Nat'l Fed'n of Indep. Bus. V. Sebelius,* 567 U.S. 519, 620 (2012) (plurality op.). This allows Congress to induce states to adopt policies that the federal government could not otherwise impose. *Id.; see also South Dakota v. Dole,* 483 U.S. 203, 210 (1987).

Importantly, federal conditions must be related to the funding's purposes. *New York v. United States,* 505 U.S. 144, 188 (1992). This court agrees with HUD that "Congress has exercised its Spending power to 'promote the general welfare of the Nation by employing the funds . . . to assist [PHAs] to remedy unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income

9

families.' 42 U.S.C. § 1437(a)(1)(A)." ECF 28 at 23. Thus, the condition that PHAs implement no smoking policies directly relates to the purpose of the funding. Mr. Good's Tenth Amendment claim cannot survive summary judgment.

      5.    *Other Claims*

Mr. Good's complaint alleges four constitutional violations under the First, Fourth, Fifth and Tenth Amendments. ECF 1 at 2. But in his summary judgment materials, he alleges additional claims under the Fifth Amendment right against self-incrimination, the Ninth Amendment, 42 U.S.C. § 12131 (the "ADA"), and 5 U.S.C. § 701 (the "APA"). ECF 26. It is well-established in this circuit that a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment. *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002). By extension, this would include adding claims in a plaintiff's motion for summary judgment. *See Santrizos v. Aramark Corp.*, No. 96 C 8391, U.S. Dist. LEXIS 15946, 14-15 (N.D. Ill. Sept. 29, 1998) ("Argumentation in one's brief is the inappropriate means of alleging new claims; rather, 'such eleventh hour amendments should ordinarily be presented to the district court, which has discretion to grant or deny the motion.'") (quoting *Whitaker v. T.J. Snow Co.,* 151 F.3d 661, 664 (7th Cir. 1998)). This forecloses Mr. Good's ability to add new claims in his summary judgment brief; nonetheless, his claims don't withstand legal scrutiny.

In his summary judgment brief, Mr. Good asserts "[t]he right to smoke would certainly be covered under the 9th Amendment." ECF 26 at 2. However, "[t]his argument is a non-starter, as the Ninth Amendment 'is a rule of interpretation rather than a source of rights.'" *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (quoting *Froehlich v. Wisconsin Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir. 1999); *see also Quilici v. Village of Morton Grove*, 695 F.2d 261, 271 (7th Cir. 1982) (noting that "the Supreme Court has never embraced this theory.").

Likewise, Mr. Good's allegation of a violation of his Fifth Amendment right against self-incrimination is without merit. The Fifth Amendment provides that no person shall be "compelled in any criminal case to be a witness against himself." This is not a criminal proceeding, nor does Mr. Good claim that criminal charges, or a threat of criminal charges, have been brought or threatened against him. *See Mahoney v. Kesery,* 976 F.2d 1054, 1061-62 (7th Cir. 1992).

Next, Mr. Good references the ADA and says that "HUD has chosen to endanger the lives of those who are handicap" because "[s]moking IS addiction and because of that it is viewed as a handicap and thus the ADA comes in to play." ECF 26 at 2, 3 (emphasis in original). However, as HUD's rule explicitly states, "the act of smoking itself is not a disability under the ADA." 81 Fed. Reg. at 87441; *see also Brashear v. Simms*, 138 F. Supp. 2d 693, 695 (D. Md. 2001) ("In any event, both smoking and 'nicotine addi[c]tion' are readily remediable, either by quitting smoking outright through an act of willpower (albeit easier for some than others), or by the use of such items as nicotine patches or nicotine chewing gum.") ("If the smokers' nicotine addiction is thus remediable, neither such addiction nor smoking itself qualifies as a disability within the coverage of the ADA, under well-settled Supreme Court precedent."). Furthermore, a disabled plaintiff must pursue their claims against federal agencies under the Rehabilitation Act of 1973, not the ADA. *See Dyrek v. Garvey,* 334 F.3d 590, 597 n.3 (7th Cir. 2003) ("While the ADA does not apply to federal agencies . . . the standards set out in the ADA are used in determining whether a violation of the Rehabilitation Act occurred in the employment context."); 42 U.S.C. § 12111 (the term "employer" under the ADA does not apply to the United States).

Even though smoking is not a disability, HUD's rule expressly allows participants to seek a reasonable accommodation under section 504 of the Rehabilitation Act of 1973, the Fair Housing Act, and the ADA, including requests from residents with mobility impairments or mental disabilities.

81 Fed. Reg. at 87441. Thus, HUD's rule is compliant with the ADA, and Mr. Good's claim cannot survive summary judgment.

In the end, the court returns to where it began—with the APA. Mr. Good cites the APA, which provides the judicial standard for reviewing an agency decision. Under the APA, an agency rule will be upheld unless it is "arbitrary, capricious, an abuse of discretion, . . . contrary to constitutional right, . . . [or] in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2). HUD prohibited the use of certain tobacco products in public housing to (1) improve air quality, (2) benefit the health of residents, visitors and staff, (3) reduce the risk of catastrophic fires, (4) lower overall maintenance costs. *See* 81 Fed. Reg. at 87432. The rule is limited to secondhand smoke-producing paraphernalia, and does not prohibit electronic nicotine delivery systems nor smoking outside, 25 feet or more away from public housing units. 81 Fed. Reg. at 87432, 87436. Further, in implementing its no-smoking rule, HUD relied on scientific evidence that secondhand smoke causes risks to both adults and children.[1] Courts have agreed that secondhand smoke is a serious risk, so HUD's rule is not arbitrary or capricious. Instead, it targets a serious harm to the public and is tailored to that purpose. *Goodpaster,* 736 F.3d at 1072; *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Telepo v. Ferguson, et al.,* No.

---

[1] "HUD relies on the conclusions of Federal agencies and other authoritative organizations regarding the health effects of exposure to SHS. Based on these conclusions, the scientific evidence for the adverse health effects of SHS exposure is compelling. In a 2006 report, the Surgeon General concluded that there is no risk-free level of exposure to SHS. In children, the U.S. Surgeon General concluded that SHS exposure can cause sudden infant death syndrome, and can also cause acute respiratory infections, middle ear infections and more severe asthma in children. In adults, the Surgeon General has concluded that SHS exposure causes heart disease, lung cancer, and stroke. In addition, SHS is designated as a known human carcinogen by the U.S. Environmental Protection Agency, the U.S. National Toxicology Program, and the International Agency for Research on Cancer. The Surgeon General also concluded in 2006 that 'eliminating indoor smoking fully protects nonsmokers from exposure to SHS. Separating smokers from nonsmokers, cleaning the air, and ventilating buildings cannot eliminate exposure to secondhand smoke.' HUD acknowledges that the movement of SHS from a smoker's unit to other parts of a building can be partially reduced through improvements in ventilation systems and through the increased air sealing of units; however, these strategies cannot fully eliminate exposure. Increased air sealing could also have the disadvantage of increasing SHS exposures to non-smokers in the sealed units, and could increase the amount of SHS that settles on surfaces within the sealed units." 81 Fed. Reg. at 87441.

5:17-cv-2865, ECF 27 (E.D. Pa. Jan. 3, 2018). Mr. Good's claim under the APA cannot withstand summary judgment.

C. Motion for Preliminary Injunction

The court construes Mr. Good's letter to the court on July 16, 2019 as a motion for a preliminary injunction. ECF 31. In this letter, Mr. Good states "it is within my right to request that this rule be suspended until it has been determined if said law is legal or not." *Id.*

Because Mr. Good has not established that he is likely to succeed on the merits, or the remaining elements of an injunction, his request must be denied. *See D.U. v. Rhoades,* 825 F.3d 331, 335 (7th Cir. 2016) (to obtain a preliminary injunction a plaintiff must establish that he is likely to succeed on the merits, among other requirements).

## CONCLUSION

HUD's Smoke Free Rule, promulgated in December 2016, does not violate Mr. Good's constitutional rights. It is not arbitrary or capricious. Accordingly, the court GRANTS HUD's motion for summary judgment (ECF 28) and DENIES Mr. Good's motion for summary judgment (ECF 26). Furthermore, Mr. Good's motion for preliminary injunction (ECF 31) is DENIED.

SO ORDERED.

December 12, 2019                                             *s/ Damon R. Leichty*
                                                              Judge, United States District Court